EASTERN DIST.
*May,* 1837.

TIO ET AL.
*vs.*
VANCE ET AL.

*Ilsley* and *Nicholls*, on the same side.

*Deblieux, contra.*

The return day of the appeal cannot be prolonged by the judge à *quo*, for time to make out the transcript, or to do any posterior act.

---

## TIO ET AL. *vs.* VANCE ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The hire or rent is due when it depends alone on the will of the hirer or lessee to enjoy the thing hired, or when he has not been prevented from enjoying it by the lessor.

It is not of the essence of the contract of affreightment that the merchandize should be transported in the same vessel to the port of destination. In case of necessity, the captain or owner may repair the vessel or furnish another to complete the voyage and earn the freight.

If the merchant refuses to allow repairs, or permit the captain to employ another vessel, the owners of the chartered vessel will be entitled to *the whole* freight of the *full* voyage, although the cargo is not delivered at the port of destination.

So, where a vessel was so much injured on the second day of her voyage, as to make it necessary to return to port and repair, and when a large part of the cargo was so damaged that it was sold by order of the port wardens, for whom it might concern, and the remainder unfit to ship without repacking : *Held*, that the *freighters* of the vessel were bound to pay *full freight*, as if the cargo had been delivered at the port of destination, by declining to re-ship, on being notified ten days after the accident, that the vessel was ready to take in the cargo and proceed on her voyage.

This is an action to recover the full freight of the brigantine Fama, from the port of New-Orleans to that of Brazos St. Jago, or Tampico, according to a contract of affreightment or charter party, entered into by the plaintiff, as consignee, and on behalf of Messrs. Rodriguez & Alcedon, with the defendants, for the sum of three thousand five hundred dollars, together with five per cent. primage.

The plaintiff alleges, that in compliance with the contract of charter party, the brig Fama received on board the cargo shipped by the defendants, and on the 3d March, 1836, departed from New-Orleans on her voyage; that on the next day, accidentally, and without the fault of captain or owners, she struck a snag in descending the Mississippi, and was so damaged as to be obliged to return to the city for repairs. That she discharged the cargo, which was taken possession of by the defendants, and finished repairing, and notified the latter, on the 14th of the same month, that she was ready to receive her cargo and proceed on her voyage, and that they declined and refused to put said cargo on board, or any other, by reason of which they became bound for the whole freight.

The defendants denied their liability and averred, that by the injury done to said vessel, that more than three fourths of the cargo was damaged, so as to render it impossible to re-ship it, and that the voyage was broken up, and the

damaged portion of the cargo sold by order of the port Eastern Dist. wardens after due inspection, etc. They aver that no part May, 1837. of the voyage was performed, or any delivery of any of the goods at the port of destination, according to the stipulations in the contract of charter party, or bills of lading.

Upon these pleadings and issues the parties went to trial.

The district judge was of opinion the plaintiffs were entitled to recover the hire of the vessel, as if she had wholly performed the contract, by proceeding on the voyage, with or without the cargo, the fulfilment of it having been prevented by the refusal of the defendants to furnish a cargo when the vessel was repaired and tendered to them. *Abbott on Shipping*, 279, *and notes*.

Judgment was rendered for the plaintiffs, and the defendants appealed.

The material facts of the case are fully stated in the following opinion of the court.

*Benjamin*, for the plaintiff.

1. The charter party, as found on the record in this suit, is a contract by which the plaintiffs let their vessel to defendants, who, for a certain consideration, were to have the entire control of it for the stipulated voyage. Their obligations then consisted simply in furnishing the vessel in a sea-worthy condition, and in prosecuting the voyage according to the terms of their contract. These obligations they have complied with. They had no interest whatever in the cargo, and cannot be affected by the fact of its having became damaged without their fault.

2. When an accident happens in the course of a voyage, and the cargo is delivered short of the port of destination, the right to freight is governed by the following rules : 1st, If the owner refuse to repair his vessel, or to furnish another to continue the voyage when required by the freighter, no freight is due. 2d, If by agreement between the owners and freighters, the goods are delivered by the former and received by the latter, a *pro rata* freight is due. 3d, If, as in the present case, the owners repair the vessel and offer to

26

continue the voyage, but the freighter refuses, and insists on taking back his goods, the entire freight is due.

These three positions are not only supported by the concurrent authority of the commercial laws of this country, England, Scotland and the Continent, but are direct corollaries from the nature of the contract itself. *Abbott on Shipping*, 311, 316, 318, *N. S.* 1, 322. 3 *Kent,* 2d *edition,* 228. 1 *Johnson,* 205, 3 *Johnson,* 321. 9 *Johnson,* 17. 1 *Phillips on Insurance,* 289, 427. 1 *Bell's Commentaries,* 556, 570, 573, *section* 6. *French Code de Commerce,* 288, 293, 296.

3. But the appellant urges that the delivery of the cargo is a condition precedent to the recovery of the freight. This objection is answered by the authorities above cited, and by a well known principle of law and justice, contained in the Louisiana Code, article 2035, and commented upon and explained by this court in Walls *vs.* Smith, 3 Louisiana Reports, 501, viz : when the performance of a condition is prevented by the party in whose favor it is stipulated, it is considered as fulfilled.

*Mitchell,* for the defendant, contended, that a total recovery could not be had on the contract of charter party, because the delivery of the cargo, at the port of destination, was a condition precedent, according to the terms and stipulations in the charter party and bills of lading.

2. If a part of the cargo be taken by pirates, the master or owners of the vessel cannot recover full freight, because a delivery of all the cargo is a condition precedent.

3. In this case there was no voluntary receipt of the goods, so as to charge the shippers. The cargo was damaged by the perils of the river, and could no longer be re-shipped, and the voyage thereby broken up.

4. The shippers having furnished a cargo according to the contract of charter party, are clearly not under any obligation to furnish another, this one being too much damaged for re-shipment. See the cases in 1 *Johnson,* 211. 2 *Ibid.* 336. 9 *Ibid.* 86. 17 *Ibid.* 79. 5 *Binney,* 531. 5 *Martin,*

254.   *Abbott on Shipping*, 300.   8 *East*, 441.   10 *Ibid.* 525.

*Louisiana Code*, 1893, 1910.

*Bullard, J.*, delivered the opinion of the court.

This is an action to recover the hire of the brig Fama, chartered by the defendants for a voyage from New-Orleans to Brazos St. Jago, or Tampico.  The defendants resist the payment, on the ground that the vessel did not proceed with the cargo, or deliver it at the place of destination, but damaged more than three fourths of it in the river Mississippi, so as to render it impracticable to re-ship it ; that the voyage was thereby broken up, and the damaged portion of the cargo, after having been duly inspected and surveyed by the port wardens, was by them ordered to be sold, and it was so sold for account of the underwriters, and not accepted voluntarily or unconditionally; but merely received by them as agent for the insurers ; that the voyage, nor any part of it, was not performed, no transportation or delivery of the cargo was made, according to the terms and stipulations of the charter party or bills of lading.

The facts established on the trial are, that the brig departed from from New-Orleans on her voyage on the 3d of March, and on the 4th, about day-light, struck some obstacle under water, which caused her to spring a leak; that she was leaking so fast that it became necessary to strand her, and having succeeded in partially stopping the leak, it was found expedient to return to port to repair.  She reached the city on the 5th, in the afternoon, and on the 7th they began to discharge the cargo, and finished discharging on the 9th, at noon.   It was found that a large part of the cargo was damaged, and was sold by direction of the port wardens, for account of whom it might concern.   On the 14th of the same month, the defendants were notified by the latter that the brig had finished her repairs, and was ready to receive her cargo on board, in order to proceed on her voyage.   But the defendants declined putting any cargo on board.   It appears that the cargo was too much damaged to be re-shipped, at least without being repacked.

The hire or rent is due when it depends alone on the will of the hirer or lessee to enjoy the thing hired, or when he has not been prevented from enjoying it by the lessor.

It is not pretended that the damage done to the cargo was occasioned by the fault or negligence of the captain or crew, or that the vessel was not sea-worthy at the time she sailed on the projected voyage.

The obligations of the parties to a contract of affreightment by charter party, spring from the nature of the contract, which is one essentially of letting and hiring. As a general principle, it is well settled, that the hire or rent is due when it depends alone on the will of the hirer or lessee to enjoy the thing, or when he has not been prevented from enjoying it by the lessor. *Pothier Contrat de Louage.* 2 Boulay Paty 363.

It is not of the essence of the contract of affreightment that the merchandize should be transported in the same vessel to the port of destination. In case of necessity, the captain or owner may repair the vessel, or furnish another to complete the voyage and earn the freight.

If the merchant refuses to allow repairs, or permit the captain to employ another vessel, the owners of the chartered vessel will be entitled to *the whole* freight of the *full* voyage, although the cargo is not delivered at the port of destination.

When, therefore, it is asserted that the transportation of the cargo to the port of destination, is a condition precedent, without which the freight or hire cannot be recovered, it must be taken with this limitation, that the charterer was not, by his own act, prevented the performance of that condition. If the cargo had been delivered at the place of destination, however deteriorated by the perils of the sea, it is conceded on all hands, that the whole freight would have been earned. It is not of the essence of the contract that the merchandize should be transported in the same vessel, but in case of necessity arising from *vis major* during the voyage, the captain or owners have a right either to repair, if it can be done within a reasonable time, or to employ another vessel and earn the freight. "If the merchant disagrees with this, (to use the words of Lord Mansfield,) and will not let him do so, the master will be entitled to the whole freight of the *full* voyage, and so it was determined by the House of Lords in the case of Lutwidge & How *vs.* Gray et al." *Abbott on Shipping*, 311.

According to these principles, if the Fama, after the accident, had put into an intermediate port to repair, and had a few days after offered to proceed on the voyage, having completed her repairs, and this had been declined by the charterers, who, in the meantime, had disposed of the cargo, we do not doubt that the owners would have been entitled to full freight. How is the case varied when the port of

departure becomes, as it were, a port of necessity, as in this case? The voyage was begun, and whether the accident happened in the Mississippi or on the coast of Mexico; whether the vessel put back to New-Orleans or put into any port between that and the Brazos St. Jago, for the purpose of making repairs and saving the cargo, cannot, in our opinion, change the relative rights of the parties.

Lord Ellenborough, who is supposed by the counsel for the appellants, to have sanctioned, in one case, a different doctrine, laid down the law, in the case of Hunter vs. Prinsep, in the following manner : " The ship owners undertake that they will carry the goods to the place of destination, unless prevented by the dangers of the sea or other unavoidable casualties ; and the freighter undertakes that if the goods be delivered at the place of destination he will pay the, stipulated freight, but it was only in that event, viz : of their delivery at the place of destination, that he, the, freighter, engages to pay any thing. If the ship be disabled from completing her voyage, the ship owner may still entitle himself to the whole freight, by forwarding the goods by some other means to the place of destination ; but he has no right to any freight if they be not so forwarded, unless the forwarding them be dispensed with, or unless there be some new bargain on the subject. If the ship owner will not forward them, the freighter is entitled to them without paying any thing. One party, therefore, if he forward them, or be prevented or discharged from so doing, is entitled to his whole freight, and the other, if there be a refusal to forward them, is entitled to have them without paying any freight at all." 10 East, 378. Abbott on Shipping, 322.

If on a previous occasion his lordship had apparently lent the countenance of his great name to a contrary doctrine, it is not for us to reconcile him to himself. We think ourselves authorized to follow this latter decision as more consonant to the settled maxims of maritime law, and in harmony with the best authorities in France, England and the United States.

We concur with the counsel for the appellants, that this is not a case in which partial freight might be allowed à pro

So, where a vessel was so much injured on the second day of her voyage, as to make it necessary to return to port and repair, and when a large part of the cargo was so damaged that it was sold by order of the port wardens, for whom it might concern, and the remainder unfit to ship without repacking: *Held*, that the *freighters* of the vessel were bound to pay *full freight*, as if the cargo had been delivered at the port of destination, by declining to re-ship, on being

EASTERN DIST.
May, 1837.

rata itineris. No part of the cargo was, in fact, conveyed to the port of destination, nor was there such a breaking up of the voyage as to create a new implied promise to pay partial freight. The plaintiffs are entitled to the whole or nothing, and we agree with the court below, that the defendants are bound to pay the entire hire of the brig.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.